IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHIRELY A. ROCKSTEAD and )
CAROL J. HENDERSON, )
            )
    Plaintiffs, )
            )
  vs.         )  No. 05 C 4485
            )
CITY OF CRYSTAL LAKE, a )
municipal corporation, )
            )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Shirley Rockstead and Carol Henderson brought this action against defendant City of Crystal Lake, alleging that defendant took their property without providing compensation, when it constructed various structures and facilities that created flooding conditions on plaintiffs' property. Invoking the "takings clause" of the Fifth Amendment of the U.S. Constitution, plaintiffs seek just compensation. Defendant now moves to dismiss the action under FED. R. CIV. P. 12(b)(6). For the following reasons, defendant's motion is granted.

## BACKGROUND

The following facts are taken from plaintiffs' complaint. Plaintiffs' property is located in McHenry County, Illinois, and is partially contiguous to property owned by defendant. The natural drainage on plaintiffs' property was obstructed after defendant constructed culverts, pipelines, flood control and sanitary treatment facilities on the portion of its property that is adjacent to plaintiffs' property. As a result of defendant's additions, plaintiffs claim that water now drains toward, instead of away from, their land (cplt. at ¶¶ 11, 21). Plaintiffs claim that

that land, which was previously cultivatable and used as productive farmland, has been reduced to useless wetlands (*id.* at ¶¶ 3, 16).

In 1994 plaintiffs filed an action seeking damages and equitable relief against defendant. *See* Rockstead, et al. v. City of Crystal Lake, No. 96 CH 297. This action has languished in state court for over a decade now, during which time plaintiffs have failed to recover damages or compensation. On July 14, 2004, the circuit court in McHenry County ruled that immunity shielded defendant from damages. Then, on July 27, 2005, the circuit court held that plaintiffs' claim for inverse condemnation failed because they failed to show that their land was actually taken under Illinois law. This latter decision did not end plaintiffs' action in state court, as the circuit court found "a genuine issue of material fact as to the timeliness of the cause of action" (def. ex. B at 7). Less than two weeks after the circuit court denied plaintiffs compensation, plaintiffs filed a complaint in federal court. In their federal complaint, they claim that they have exhausted their state remedies and further action in state court would be futile. Subsequent to filing that complaint, plaintiffs and defendant settled a condemnation action brought by defendant in state court.

Defendant argues that the action is not ripe for federal review because plaintiffs failed to exhaust their state remedies. Defendant alternatively argues that even if the case is ripe for review, abstention is proper due to the ongoing state proceedings. Lastly, defendant contends that transfer of venue to the district court in the Western Division of the Northern District of Illinois is proper. Plaintiffs riposte that the case is ripe because appealing the circuit court's order is futile. They further contend that their inability to obtain relief in state court renders abstention improper, and that their federal action does not otherwise conflict with the ongoing state action. Plaintiffs also find the Eastern Division to be the most convenient forum.

## DISCUSSION

Prior to assessing the parties' arguments, we address several issues surrounding the proper standard of review. Defendant brings its motion to dismiss under Rule 12(b)(6), and it thus challenges the sufficiency of the complaint, not the underlying merits of plaintiffs' action. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). But by claiming that the case is not ripe for adjudication under the special ripeness rules that apply to "takings claims," defendant essentially argues the court lacks subject matter jurisdiction. *See* Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 957-58 (7th Cir. 2004). Thus, the motion should have been brought pursuant to Rule 12(b)(1).

While a Rule 12(b)(6) motion challenges the sufficiency of the complaint and is generally limited to the four corners of the complaint, with limited exceptions (Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993)), under Rule 12(b)(1) a court "look[s] behind the plaintiff's allegations and make[s] factual findings for purposes of assessing its subject matter jurisdiction" (Palay v. United States, 349 F.3d 418, 424 (7th Cir. 2003); *see also* Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999)). Documents external to the complaint are central to this motion. Not all of those documents are referred to in the complaint. Defendant does not challenge the allegations of jurisdiction in the complaint, and instead focuses on the truth of the facts alleged, specifically plaintiffs' claims of futility. *See* Royal Towing, Inc. v. City of Harvey, 350 F. Supp. 2d 750, 752 (N.D. Ill. 2004).

We choose to proceed under Rule 12(b)(1), even though defendant failed to invoke that rule. Doing so is faithful to our obligation to police subject matter jurisdiction. *See* Cook v. Winfrey, 141 F.3d 322, 325 (7th Cir. 1998). Under Rule 12(b)(1), we accept as true all well-

pleaded factual allegations and draw reasonable inferences in favor of plaintiffs. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993).

Generally, a plaintiff need not exhaust judicial remedies as a precondition to bringing a federal civil rights suit. Gamble v. Eau Claire County, 5 F.3d 285, 288 (7th Cir. 1993) (citing Patsy v. Board of Regents, 457 U.S. 496, 500 (1982)). However, in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court established "special ripeness standards for constitutional property rights claims." Patel v. City of Chicago, 383 F.3d 569, 570 (2004). The two-pronged Williamson County ripeness standard requires that "plaintiff must demonstrate that he or she received a 'final decision' from the relevant government entity" and "the plaintiff must have sought 'compensation through the procedures the State has provided for doing so.'" Forseth v. Village of Sussex, 199 F.3d 363, 372 (7th Cir. 2000) (quoting Williamson, 473 U.S. at 186-87, 194). The first prong has been dubbed the "final decision requirement," and the second, the "exhaustion requirement." Id. Because this case involves a physical, as opposed to regulatory taking,[1] the final decision requirement has been met. See id. at 372 n.12 (physical invasion constitutes a "final decision"); Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 91 (1st Cir. 2003). The "streamlined inquiry" focuses on Williamson County's exhaustion requirement. Greenfield Mills, 361 F.3d at 958.

The exhaustion requirement generally refers "to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." Williamson County, 473 U.S. at

---

[1] Williamson County focused on a regulatory taking, but the ripeness rules announced therein have been extended to physical takings. See Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 380 (2d Cir. 1995); McKenzie v. City of White Hall, 112 F.3d 313, 317 (8th Cir. 1997); Arnett v. Myers, 281 F.3d 552, 563 (6th Cir. 2002).


193. The Court forged an exception to the exhaustion requirement when it noted that a plaintiff may be excused from exhausting available state procedures if he demonstrates that such procedures are "unavailable or inadequate." *Id.* at 197. Thus, a plaintiff need not first resort to state procedures if doing so would be futile. Daniels v. Area Plan Commission, 306 F.3d 445, 456 (7th Cir. 2002). Plaintiffs claim that they are excused from exhausting their state remedies by appealing the circuit court's decision because the remedy they seek is unavailable under Illinois law and an appeal would be futile. But first we must inquire whether an appeal is ordinarily required.

Both parties appear to assume that seeking appellate review is necessary to exhaust state remedies. In the vast majority of cases dismissed for failing to satisfy the exhaustion requirement, the plaintiff bypasses all state court opportunities for compensation. *See, e.g.*, Forseth, *supra*; Gamble, *supra*; Hager v. City of W. Peoria, 84 F.3d 865, 869 (7th Cir. 1996); Kennedy v. Village of Oak Lawn, 2000 U.S. Dist. LEXIS 16783; Popp v. City of Aurora, 2000 U.S. Dist. LEXIS 5708; Ostergren v. Village of Oak Lawn, 125 F. Supp. 2d 312 (N.D. Ill. 2000); Vigilante v. Village of Wilmette, 88 F. Supp. 2d 888 (N.D. Ill. 2000). In contrast, plaintiffs have actually sought compensation in state court, and the state court dismissed their claim.

In Williamson County, the Court observed that "no constitutional violation occurs until just compensation has been denied," which therefore obligates the "property owner [to] utilize procedures for obtaining compensation before bringing a § 1983 action." Williamson County, 473 U.S. at 194 n.13. Illinois law provides for inverse condemnation actions, which allow a landowner to recover compensation for a taking of his property in the absence of condemnation proceedings. Lamar Whiteco Outdoor Corp. v. City of Chicago, 355 Ill. App. 3d 352, 823 N.E.2d 610, 622, 291 Ill. Dec. 318 (Ill. App. 2d Dist. 2005). Section 735 ILCS 5/7-101 establishes the

procedures for recovering compensation for the taking of property. Section 5/7-101 specifically focuses on trial procedures when it requires compensation to be ascertained by a jury, unless waived. The statute contains no provisions specifying necessary appellate procedures. Neither party claims that the circuit court's summary judgment order is non-appealable. Defendant cites Il. Sup. Ct. R. 301, which states that "an appeal is a continuation of the proceeding," but this does not indicate that Williamson County compels mandatory appeals. To the contrary, a case is ripe after compensation has been sought and denied after utilizing "available avenues of state judicial review." Wisconsin Cent. Ltd. v. Public Service Com'n of Wisconsin, 95 F.3d 1359, 1369 (7th Cir. 1996).

We conclude that because appellate review is an available avenue of state judicial review, a plaintiff does not satisfy the exhaustion requirement until such review is sought. The word "available" often precedes "review" or "remedies" in the cases. *See, e.g.*, SGB Fin. Servs. v. Consolidated City of Indianapolis-Marion County, 235 F.3d 1036, 1037 (7th Cir. 2000); Sprint Spectrum L.P. v. City of Carmel, 361 F.3d 998, 1003-04 (7th Cir. 2004). Requiring all "available" resources to be used strongly suggests that a plaintiff has not exhausted state remedies after losing at the trial level. Further, permitting plaintiffs to seek federal review prior to pursuing state appellate review short-circuits Williamson County's exhaustion requirement and would allow a litigant who prefers federal court to obtain an adverse judgment in state court posthaste. Such a ruling could also provide incentives for litigants to withhold arguments in order to avoid the effect of *res judicata* in federal court. Moreover, if the appellate court were to rule in plaintiffs' favor, there would be no case or controversy for this court to adjudicate. *See*, Sprint Spectrum, 361 F.3d at 1004. The message of Williamson County is that in takings cases, litigants must avail themselves to state procedures, except if those procedures are unavailable or

inadequate. We turn now to the parties' arguments concerning the futility of appellate review.

According to plaintiffs, an appeal of the circuit court's ruling would be futile because under Illinois law land is not taken when it is only subjected to intermittent, as opposed to permanent flooding. Plaintiffs concede that defendant's construction projects have caused only intermittent flooding, and thus claim that they will never recover under state law. In response, defendant states that inverse condemnation proceedings are adequate and available, and Williamson County's exhaustion prong requires that plaintiffs appeal, despite their predictions of sure defeat.

In Daniels, the plaintiff sought an injunction in federal court prior to first seeking relief in state court. The court excused the plaintiff from exhausting state court remedies because the plaintiff could only obtain monetary damages through the state inverse condemnation proceedings. It would have been futile for the plaintiff to seek injunctive relief in state court when that remedy was unavailable. Daniels, 306 F.3d at 456. Unlike the scenario depicted in Daniels, no state statute precludes plaintiffs from recovering for the alleged taking. Plaintiffs only claim that they cannot obtain damages due to adverse case law. In Daniels, for the plaintiff to obtain injunctive relief in state court would have required the judicial nullification of a legislative act. Here, plaintiffs need only seek to distinguish prior case law. The futility analysis often focuses on the inadequacy or availability of procedures, and plaintiffs do not identify any procedures from the inverse condemnation proceeding that are inadequate. *See* Harbours Pointe of Nashotah, LLC v. Village of Nashotah, 278 F.3d 701, 704 (7th Cir. 2002) ("If a state provides adequate procedures for seeking just compensation, a property owner cannot state a claim under federal law until he has used those procedures and been denied compensation."). Plaintiffs are not barred from arguing that they are entitled to compensation.

As the plaintiffs argue here, in SGB, *supra*, the plaintiff argued that, based on prior state court decisions, the state courts would not entertain the argument it intended to make, and that pursuing a state court action was consequently futile. The court rejected that argument and held that the Williamson County exhaustion requirement does not turn on a plaintiff's expectation of success. SGB, 235 F.3d at 1038 ("State remedies do not become unavailable just because resort to them may fail."). Plaintiffs argue that SGB is distinguishable because the plaintiff there completely bypassed state court, whereas plaintiffs say their fruitless state court litigation supports their declaration of futility. The logic of SGB, however, would not permit a plaintiff who lost in state court, at the trial level, to take his case to federal court; it noted that plaintiffs cannot declare state remedies "futile ex ante, without ever being tried." *Id.* As discussed above, we believe exhaustion of remedies requires appealing an adverse trial court decision. We would have a different case if the circuit court's summary judgment ruling involved the application of a statutory rule in a manner that is not open to dispute. But the circuit court's ruling turned on interpretation of facts and law, and that decision is not a bar that "would block all consideration of a claim." *Id.* at 1039.

On appeal, plaintiffs could argue that the cases that the circuit court relied on do not set forth a "permanent standing water" requirement, as the circuit court concluded (*see* def. ex. B at 7). Plaintiffs could contend that when cultivatable land is transformed into land that is "permanently wet enough to be designated wetlands" (def. ex. B at 7), the water "permanently inundates" in a manner that has been held to be "a physical invasion tantamount to a taking." Luperini v. County of DuPage, 265 Ill. App. 3d 84, 637 N.E.2d 1264, 1268, 202 Ill. Dec. 528 (Ill. App. 2d Dist. 1994). Luperini was the primary focus of the circuit court's analysis. Indeed, the circuit court only cited Luperini and one other case on which Luperini relied.

The land in <u>Luperini</u> was subjected to intermittent flooding after an adjacent construction project; however, prior to the completion of that project portions of the land experienced flooding, and the court identified a cause independent of the construction project that contributed to the flooding. Here, the limited record shows that plaintiffs' land was cultivatable, but now is classifiable as wetlands. Also, the record does not disclose an alternate source of flooding. A takings analysis involving flooding is ultimately a question of degree (<u>Winnebago County v. Kennedy</u>, 60 Ill. App. 2d 408, 208 N.E.2d 612 (Ill. App. 2d Dist. 1968)), not an inflexible doctrine that precludes all review once it is discovered that the subject land is not lost under several feet of water.

We offer these observations not to cast doubt on the circuit court's decision (the evaluation of which is for the Illinois Appellate Court), but, instead, to illustrate why we disagree with plaintiffs' declaration of futility. The appellate court has discretion to find that a taking has occurred, and <u>Luperini</u> does not indicate that the appellate court has "dug in its heels" and made clear that it would reject plaintiffs' claim. <u>Murphy v. New Milford Zoning Comm'n</u>, 402 F.3d 32, 349 (2d Cir. 2005). There is thus a state court to hear plaintiffs' arguments, and that plaintiffs may lose on the merits is "neither here nor there." *Id.* at 1039; *see also* <u>Greenfield Mills</u>, 361 F.3d at 958; <u>Unity Ventures v. County of Lake</u>, 841 F.2d 770, 776 (7th Cir. 1988). This case is not ripe because if the appellate court decided that a compensable taking occurred, then there would be no basis for relief under section 1983, and no case or controversy. <u>SGB</u>, 235 F.3d at 1038.

We observe that plaintiffs may raise their federal claims in state court. It is not clear whether they have actually done so. The Supreme Court recently reaffirmed the ability of state courts to entertain federal constitutional claims in <u>San Remo Hotel v. County of San Francisco</u>,

125 S. Ct. 2491, 2506 (2005). In <u>San Remo</u>, the Court held that in takings cases that are first raised in state court under <u>Williamson County</u>, federal courts must afford state court decisions full faith and credit under 28 U.S.C. § 1738. A party cannot avoid the full faith and credit clause by reserving federal claims for litigation in federal court. The <u>San Remo</u> decision affirms that despite the preclusive effect that a state court decision may have on a future federal case,[2] plaintiffs must still first seek compensation in state courts. In addition to the full faith and credit clause, the <u>Rooker-Feldman</u> doctrine may also block a federal claim. *See* <u>San Remo</u>, 125 S. Ct. at 2509 (Rehnquist, C.J., concurring); <u>Zealy v. City of Waukesha</u>, 153 F. Supp. 2d 970, 980 (E.D. Wis. 2001). Again, it is not clear whether plaintiffs raised their federal claims in state court, but in light of <u>San Remo</u>, failing to raise those claims may preclude future consideration in federal court. We offer these points here only because they appear central to this case, and they were absent in the parties' memoranda.

In sum, plaintiffs' case is not ripe for federal review because plaintiffs have not satisfied <u>Williamson County's</u> exhaustion requirement. Having found the case is not ripe, we do not reach the abstention and venue arguments.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Dec. 29, 2005.

---

[2] This catch-22 has been described as the "<u>Williamson</u> trap." *See* <u>DLX, Inc. v. Kentucky</u>, 381 F.3d 511, 518 n.3 (6th Cir. 2004); Madeline J. Meacham, *The* Williamson *Trap*, 32 URB. LAW. 239 (2000).